OSCN Found Document:KUTZ v. DEERE & COMPANY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 KUTZ v. DEERE & COMPANY
2015 OK CIV APP 6
Case Number: 111624
Decided: 12/19/2014
Mandate Issued: 01/23/2015
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2015 OK CIV APP 6, __ P.3d __

 

JOHN KUTZ, An Individual, Plaintiff/Appellant,
and
American Farmers and Ranchers Mutual Insurance Company, an Oklahoma Corporation, Plaintiff,
v.
DEERE & COMPANY, A Foreign Corporation, and GRISSOMS, L.L.C., an Oklahoma Limited Liability Company, Defendants/Appellees.



APPEAL FROM THE DISTRICT COURT OF
OKMULGEE COUNTY, OKLAHOMA

HONORABLE H. MICHAEL CLAVER, TRIAL JUDGE



AFFIRMED



Richard D. Gibbon, GIBBON, BARRON & BARRON, P.L.L.C., Tulsa, Oklahoma, for Plaintiff/Appellant,
Jo Anne Deaton, Lindsey McDowell, RHODES, HIERONYMUS, JONES, TUCKER & GABLE, P.L.L.C., Tulsa, Oklahoma, for Defendant/Appellee, Deere & Company,
Tessa L. Hager, Bart J. Robey, CHUBBUCK, DUNCAN & ROBEY, Oklahoma City, Oklahoma, for Defendant/Appellee, Grissoms, L.L.C.




Wm. C. Hetherington, Jr., Vice-Chief Judge:


¶1 Plaintiffs Kutz and Plaintiff American Farmers and Ranchers Mutual Insurance Company (AFR) filed this action alleging manufacturers' product liability, breach of warranties, negligence, and fraud against Defendants/Appellees Deere & Company (Deere) and Grissoms, L.L.C. (Grissoms, or collectively, Appellees). Appellees moved for summary adjudication against Kutz, arguing the parties' settlement agreement barred all of Kutz's claims. Kutz opposed the motion, and Appellees moved to strike his supporting affidavit. The trial court granted both motions, and after AFR dismissed its claims, Kutz timely moved for a new trial. His appeal challenges all three trial court rulings.

STANDARD OF REVIEW

¶2 Kutz's appeal is submitted without appellate briefs in conformance with Okla.Sup.Ct.R. 1.36, 12 O.S.Supp.2003, Ch. 15, App. 1. We review a denial of a motion for new trial for abuse of discretion, however, when the trial court's exercise of such discretion rests on the propriety of the underlying grant of summary judgment, "the abuse-of-discretion question is settled by our de novo review of the summary adjudication's correctness." Reeds v. Walker, 2006 OK 43, ¶ 9, 157 P.3d 100. All inferences and conclusions are to be drawn from the underlying facts contained in the record and are to be considered in the light most favorable to the party opposing the summary judgment. Rose v. Sapulpa Rural Water Co., 1981 OK 85, 621 P.2d 752. Summary judgment is improper if, under the evidentiary materials, reasonable individuals could reach different factual conclusions. Gaines v. Comanche County Medical Hospital, 2006 OK 39, ¶4, 143 P.3d 203.

HISTORY OF CASE

¶3 The underlying facts in this case surround Kutz's purchase of a swather and rotary platform (farm equipment) in 2007 for use in his custom hay cutting business from Grissoms, LLC, a farm equipment dealer for Deere & Company in Okmulgee County, Oklahoma, with which Kutz had done business for many years. The header of the farm equipment caught fire three weeks post-purchase and numerous times thereafter between the 2007-2009 haycutting seasons despite efforts by Defendant Grissoms to discover and fix the problem.

¶4 On June 23, 2009, the allegedly defective farm equipment was totally destroyed by fire. Two weeks later Grissoms supplied Kutz with replacement equipment for which he later discovered was subject to a rental contract with a daily rental fee.

¶5 In August 2009, Kutz wrote a letter to Deere in which he made a detailed proposal to settle the situation, including payment of his prior accounts and sale of a rotary platform to him "for [$10,000.00]" with a reasonable financing rate.[1] That same month, Deere drafted a "Settlement Agreement and Release" with the terms on which the parties had agreed, i.e., a $10,000.00 credit "towards the purchase of John Deere 995 Rotary Platform PIN [########]."[2] A representative of Grissoms, Mr. Rink, took the Settlement Agreement to Kutz on August 25, 2009, who signed it that same day. It is undisputed Kutz received the $10,000.00 credit on his purchase of the specified farm equipment.

¶6 In June of 2011, Kutz and AFR, which insurance carrier undisputedly paid Kutz for the repairs and the total loss on the farm equipment in 2009, filed this suit in Okmulgee County District Court against Defendants Deere and Grissoms. Defendants filed separate answers, admitting the court's jurisdiction over the parties, denying the material allegations in the petition, and raising, as one of several affirmative defenses, Kutz's previous settlement and release of all his claims against the defendants arising from the subject fire.[3] Defendants moved for summary judgment against Kutz only, relying primarily on the parties' previously executed Settlement Agreement as a bar to his present action. Kutz opposed the motion, and attached supporting evidentiary material including his affidavit. Defendants moved to strike Kutz's affidavit as self-serving, inconsistent with his prior sworn depositon testimony, etc. The trial court granted both motions in its "Order" filed December 17, 2012.

¶7 Kutz identifies eight errors he contends requires reversal of the trial court's summary judgment ruling. Concerning the striking of Kutz's affidavit, he raises as issues on appeal the four grounds Defendants argued in their motion to support the court's action. Because the latter ruling limited the evidentiary material allegedly supporting Kutz's opposition to summary adjudication, we address this predicate issue first.

Striking of Kutz's affidavit

¶8 Defendants argue Kutz's affidavit "is almost the entire basis to support [his] claims that the Settlement Agreement is invalid and that he was under duress at the time he signed the Agreement." They contend the striking of Kutz's affidavit is warranted because it is 1) inconsistent with his prior sworn testimony, 2) completely self-serving without independent supporting evidence, 3) not based on personal knowledge and/or 4) improper, irrelevant and immaterial for purposes of Defendants' summary judgment motion.

¶9 "When determining whether an affidavit may be disregarded because it attempts to create a sham issue of fact, the Court may consider whether the party was cross-examined during earlier testimony, whether the party had access to the evidence at the time of earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." Tortorelli v. Mercy Health Center, Inc., 2010 OK CIV APP 105, ¶ 30, 242 P.3d 549, 561 (citing Ishmael v. Andrew, 2006 OK CIV APP 82, ¶16, 137 P.3d 1271, 1276). "A trial court may disregard an affidavit purporting to create an issue of fact by directly contradicting prior deposition testimony during which the deponent was both cross-examined and had access to the information forming the basis for the affidavit at the time of the deposition." Tortorelli, id., (citing Savage v. Burton, 2005 OK CIV APP 106, 125 P.3d 1249).

¶10 In this case, Kutz was deposed at great length in July 2012 with his attorney present about evidence to which he clearly had prior access, including his letter to Deere proposing a settlement of their dispute. At the deposition, Kutz admitted not being forced to write his proposal letter, he understood "reaching a settlement" meant the parties would compromise and end their dispute, and that he knew he was releasing his personal claims for money arising from the fire and the equipment. He also admitted he was neither told nor threatened that if he did not settle and/or release his claims with Deere that it would not let him rent the haying equipment from Grissoms.

¶11 In contrast, Kutz's affidavit executed in October 2012, explains, in pertinent part, that he was "instructed" to include certain waiver terms in his settlement proposal, that a week later he "complied," Defendants knew about "the disaster to my [future] business without workable equipment" yet had "insisted upon [his] signature" on the Settlement Agreement, and "the pressure of the situation was of such magnitude that his acceptance of the instrument was mired by the duress that he was placed under the circumstances." Further, Kutz's affidavit neither mentions newly-discovered (post-deposition) evidence nor attempts to explains his prior deposition testimony reflects confusion. Based on Tortorelli and its supporting authority, we conclude the trial court did not err in rejecting Kutz's affidavit.

Summary Judgment in favor of Defendants

¶12 Kutz also argues Defendants failed to carry their burden to establish a valid settlement agreement that was not coerced by economic duress. Duress is always question for the jury, and his evidentiary material supports coercion and duress prior to and at the time the Settlement Agreement was executed.

¶13 "The law and public policy favor settlements and compromises, entered into fairly and in good faith between competent persons, as a discouragement to litigation and such agreements are generally enforced absent fraud, duress, undue influence, or mistake." Whitehorse v. Johnson, 2007 OK 11, ¶ 9, 156 P.3d 41, 46. "A settlement agreement is a contract which constitutes a compromise between two or more parties to avoid a lawsuit and amicably to settle their differences on such terms as they can agree." Id.

¶14 Kutz argues in his response that "the freedom of [his] consent was not present" which he claims "was known to the Defendants as early as July 27, 2009, in [Kutz's] letter regarding the rental agreement being signed under duress." He further claims "there was not a meeting of the minds prior to the signing of the Settlement Agreement plus the agreement was ambiguous," the bases for which can best be described as being silent on the specifics of the $10,000 credit and accuracy of the header description.

¶15 We disagree with Kutz. Whether a settlement agreement and/or release is clear and unambiguous or the same is ambiguous is a question for the Court. Corbett v. Combined Communications Corporation of Oklahoma, Inc., 1982 OK 135, ¶ 5, 654 P.2d 616, 617.

¶16 As relevant here, the Settlement Agreement and Release states as follows:



The undersigned, John Kutz, for the sole consideration of the provisions herein documented in the settlement agreement made part of this recital, does forever release and discharge Deere & Company and Grissoms, L.L.C., their subsidiaries and affiliates . . . agents, assigns from all claims, demands, damages, actions, causes of action or lawsuits of any kind or nature whatsoever, including revocation of acceptance, and on account of all injuries or losses, known and unknown, present and future, both to persons and property, including consequential damages, resulting from a fire to John Deere 4995 Windrower, PIN [########] and John Deere 994 Rotary Platform -PIN [########] that occurred on June 23, 2009 at or near Morris, Oklahoma. (Italics added.)



Like the release in Corbett, the subject agreement clearly and unambiguously covers all of Kutz's claims that he has pleaded in this action against Defendants and about all of which he undisputedly knew at the time the Settlement Agreement was executed. "In the absence of fraud or mistake, an executed agreement of settlement is as conclusive against a party seeking to avoid it as the final judgment of a court of competent jurisdiction." Id. Kutz has not alleged mistake in this case and his allegation of fraud addresses only the rental agreement.

¶17 After Corbett, the Supreme Court also recognized economic duress as a possible basis for avoiding a settlement agreement in Centric Corporation v. Morrison-Knudsen Co., 1986 OK 83, 731 P.2d 411. According to the Court,



The elements comprising economic duress are:

A. The settlement was the result of a wrongful or unlawful act which

(1) was initiated by the coercing party,

(2) was committed with knowledge on the part of the coercing party of the impact it would have,

(3) was made for the purpose of, and reasonably adequate to secure coercion over the other, and

(4) resulted in obtaining undue advantage over the other.

B. The act or acts complained of in (A) must have deprived the coerced party of its free will, leaving no adequate legal remedy nor reasonable alternative available. In this respect it is not enough that the alleged victim merely show, for example:

(1) its reluctance to settle,

(2) its financial embarrassment, or

(3) its business necessities.

C. Detriment to the complaining party caused thereby.



Id., 1986 OK 83, ¶ 14, 731 P.3d at 417. The Court in Centric Corporation further explained "although the question of actual duress is always a question of fact for the jury, the trial court is not required to submit evidence to the jury which does not measure up to the required standard of proof." Id. "[W]hether the alleged facts are sufficient to constitute duress is a question of law." Id.

¶18 Viewing the remaining evidentiary material in the light most favorable to Kutz, we find no allegations and more importantly, no evidentiary materials of any wrongful or unlawful acts, threats or threatened actions by either Defendant that deprived Kutz of his free will, as required by Centric Corporation. See also Deutsche Bank National Trust Co. v. Daniel, 2009 OK CIV APP 13, 217 P.3d 127; Clinesmith v. Harrell, 1999 OK CIV APP 121, 992 P.2d 926. Further, on this record, it is undisputed Kutz initiated the settlement with Defendants. At best, Kutz has demonstrated a business necessity to settle the matter, which the Court in Centric Corporation held was insufficient to prove economic duress. The trial court's summary judgment in favor of Defendants is AFFIRMED.


JOPLIN, P.J., and BUETTNER, J., concur.



FOOTNOTES


[1] Kutz's August 13, 2009 letter to Deere states:

I am writing this letter in hopes we can settle the situation involving the 4995 John Deere swather and 994 Rotary platform.

The lost (sic) of revenue and customers because of this machines problems has caused considerable hardship on me and my operation. However, I would like to work out some sort of arrangement as to how to stop any future legal disputes.

I have limited funds and am willing to propose the following

Pay John Deere credit the amount still owed on accounts [########] and [#########]

Pay $4000 on each of the following accounts [########] and [########] with the balance of each to be rolled to the end of the contract.

Pay the repairs on the 4995 unit.

I am willing to do the above, but need John Deere to sell me a 995 rotary header for ten thousand dollars and refinance the entire unit at a reasonable rate (5-6%).

I have gone over this many ways and this is the only way I can survive this mess.

If this is something that can be worked out, I will sign a statement there will [be] no other legal action taken by me.

I would appreciate it if you would talk directly with me concerning this matter.

S/ John E. Kutz

[(###)-###-####]



[2] The parties' SETTLEMENT AGREEMENT AND RELEASE provides:

The undersigned, John Kutz, for the sole consideration of the provisions herein documented in the settlement agreement made part of this recital, does forever release and discharge Deere & Company and Grissoms, L.L.C., their subsidiaries and affiliates, dealers, heirs, executors, administrators, agents, assigns from all claims, demands, damages, actions, causes of action or lawsuits of any kind or nature whatsoever, including revocation of acceptance, and on account of all injuries or losses, known and unknown, present and future, both to persons and or property, including consequential damages, resulting from a fire to John Deere 4995 Windrower, PIN - E04995X330815 and John Derre 994 Rotary Platform - PIN - E00994T330222 that occurred on June 23, 2009 at or near Morris, Oklahoma.

SETTLEMENT PROVISIONS

1. Deere & Company and Grissoms, L.L.C. will provide a credit of Ten Thousand Dollars and No/100 ($10,000.00) towards the purchase of John Deere 995 Rotary Platform - PIN - E00995T350459.

The undersigned hereby represents that no other person or entity of any kind has an interest or right to participate in this Settlement, and agrees to defend, indemnify, or hold harmless the parties released hereunder from any claim, demand, action, or suit brought by any such person or entity. It is understood that this settlement agreement and release only pertains to the damages being claimed by John Kutz. This settlement agreement and release does not apply to damages that may be claimed by American Farmers & Ranchers Mutual Insurance Co.

It is understood and agreed that this settlement is the compromise of a disputed claim, and that the agreement made is not to be construed as an admission of liability on the part of the parties hereby released, and that said released parties deny liability therefore, and intend merely to avoid litigation and buy their peace.

In entering into this Settlement Agreement and Release, the undersigned represents they had ample opportunity to rely upon the legal advice of their attorneys, who are the attorneys of their choice and the terms of this Agreement have been completely read and explained to them and those terms are fully understood and voluntarily accepted for the purpose of making Full & Final compromise, adjustment and settlement of any and all claims, disputed or otherwise, present or future, because of incidents described in paragraph I as noted above.

The undersigned agrees that all the terms and amounts and activities included in this release of all claims are now and forever to be held completely confidential and that disclosure of such information can only result from the express permission of a representative of the Deere & Company Law Department and or under the signature of a judge of appropriate jurisdiction.
THE UNDERSIGNED HAS READ THE FOREGOING RELEASE OF ALL CLAIMS AND SETTLEMENT AGREEMENT AND FULLY UNDERSTANDS IT.

Signed, sealed and delivered this 25th day of August 2009.



CAUTION: Read before signing. This is a release.



Notary Public or Witness



[3] Deere also included a counterclaim, the subject matter of which it alleged "arises out of the same occurrence alleged in [Kutz's] Petition." In the counterclaim, Deere alleges it provided Kutz with the $10,000 credit pursuant to their Settlement Agreement and that "in the event the Court should determine that Plaintiff will be allowed to rescind the parties' Settlement Agreement," it requested recovery of full equipment credit.










 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2005 OK CIV APP 106, 125 P.3d 1249, SAVAGE v. BURTON
Discussed
 2006 OK CIV APP 82, 137 P.3d 1271, ISHMAEL v. ANDREW
Discussed
 2009 OK CIV APP 13, 217 P.3d 127, DEUTSCHE BANK NATIONAL TRUST CO. v. DANIEL
Discussed
 2010 OK CIV APP 105, 242 P.3d 549, TORTORELLI v. MERCY HEALTH CENTER, INC.
Discussed
 1999 OK CIV APP 121, 992 P.2d 926, 70 OBJ 3795, Clinesmith v. Harrell
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 83, 731 P.2d 411, 57 OBJ 3083, Centric Corp. v. Morrison-Knudsen Co.
Discussed at Length
 2006 OK 39, 143 P.3d 203, GAINES v. COMANCHE COUNTY MEDICAL HOSPITAL
Discussed
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed
 2007 OK 11, 156 P.3d 41, WHITEHORSE v. JOHNSON
Discussed
 1981 OK 85, 631 P.2d 752, Rose v. Sapulpa Rural Water Co.
Cited
 1982 OK 135, 654 P.2d 616, Corbett v. Combined Communications Corp. of Oklahoma, Inc.
Discussed